HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

THE MANN LAW GROUP, et al.,

Plaintiffs,

v.

DIGI-NET TECHNOLOGIES, INC., et al.,

Defendants.

CASE NO. C13-59RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on Plaintiffs' motion to compel arbitration of the remaining claims in this suit and Plaintiffs' motion to enter an appealable judgment, in accordance with Federal Rule of Civil Procedure 54(b), as to the court's July 15, 2013 dismissal of their claims against Defendants Rob Parker and Velaro, Inc. For the reasons stated below, the court GRANTS the motion to compel arbitration (Dkt. # 24) and DENIES the motion for certification of an appealable judgment (Dkt. # 25). The clerk shall STAY this matter pending arbitration. This order concludes with instructions to Plaintiffs to update the court on the status of the arbitration.

## II. BACKGROUND

Plaintiffs are two lawyers and their respective firms: The Mann Law Group, Phillip Mann, The Whitaker Law Group, and John Whitaker. In 2008, they entered a Contingent Fee Agreement ("CFA") with Digi-Net Technologies, Inc. ("Digi-Net").

ORDER – 1

1  Digi-Net held the right to enforce United States Patent No. 6,912,563 (the "Patent").
2  Plaintiffs agreed to represent Digi-Net in efforts to enforce the Patent by either
3  negotiating license agreements or pursuing patent infringement lawsuits.  The CFA
4  (which Digi-Net accepted in February 2008) provides, broadly speaking, for the
5  reimbursement of Plaintiffs' expenses from the proceeds of any negotiated royalties or
6  other licensing payments, settlement, or judgment that Plaintiffs obtain on Digi-Net's
7  behalf and for an attorney fee consisting of a fixed percentage (varying from 33% to
8  37%) of the remaining proceeds.

   The CFA also contains, on the fifth of its six pages, an arbitration clause.  The court reproduces the entire paragraph in which the clause appears:

> 11. This Agreement shall be construed under the laws of the State of Washington.  Any disputes concerning this Agreement, Attorneys' fees or that relate in any way to Attorneys' representation of Digi-Net, including any claims for professional negligence or malpractice, shall be resolved in Seattle, Washington through a summary, low-cost procedure in which the parties will jointly appoint a qualified arbitrator who specializes in such matters to promptly resolve any disputes through arbitration, whose decision shall be final and binding upon the parties.  Because this procedure for dispute resolution involves a waiver of some rights of Digi-Net and Attorneys, the parties jointly acknowledge that this alternative procedure for dispute resolution waives their respective rights to seek relief through litigation or to have a trial by jury or to conduct discovery or to appeal or to otherwise exercise rights available in litigation, rather than through arbitration.  It is, therefore, important that this matter be carefully discussed with independent counsel and that only after that review has been completed can the parties jointly agree to this low-cost, alternative dispute resolution procedure.

This paragraph is one of twelve numbered paragraphs of the CFA, all of which are in the same standard-sized font.

   The final paragraph of the CFA, which immediately follows the paragraph containing the arbitration clause, states as follows:

> 12. Attorneys specifically require that Digi-Net have this entire Agreement read and evaluated by independent counsel of its choice

ORDER – 2

>    and understand that this has been done and that the signature below acknowledges that it has been done.

Digi-Net's CEO, Rob Parker, signed the CFA just below this paragraph. He now declares that, to the best of his recollection, he did not show the CFA to independent counsel. Parker Decl. (Dkt. # 29) ¶ 2. He also avers that Plaintiffs "provided no explanations or disclosures to us regarding the potential risks of such an agreement" and that in particular, Plaintiffs "never discussed the arbitration clause with us and did not discuss with us what it meant to arbitrate or to waive discovery or what [e]ffect that could have on any disputes that might later arise." *Id.* Digi-Net's COO, who was also involved in the decision to hire Plaintiffs, confirms Mr. Parker's recollection. Chase Decl. (Dkt. # 30). Plaintiffs present no evidence that they did anything more than provide the CFA to Digi-Net and await its acceptance.

This suit, boiled down, arises out of Plaintiffs' assertion that Digi-Net, Mr. Parker and Velaro, Inc. acted improperly when they renegotiated a settlement of a lawsuit that Digi-Net had filed against Velaro. The court resolved two motions to dismiss in a July 15, 2013 order (Dkt. # 22), concluding that Plaintiffs failed to state claims against Mr. Parker or Velaro. The court ruled that Plaintiffs were not third-party beneficiaries of Velaro's settlement agreement with Digi-Net, that Velaro had not induced a breach of or otherwise interfered with the CFA, and that Plaintiffs had stated no fraud claim against Mr. Parker or Velaro.

Plaintiffs' motions make two requests: that the court compel arbitration of their claims against Digi-Net, and that the court enter judgment in accordance with its July 15 order, then certify that judgment for immediate appeal in accordance with Federal Rule of Civil Procedure 54(b). The court now considers their motions.

ORDER – 3

### III.   ANALYSIS

**A.   Motion to Compel Arbitration**

Although the parties disagree on whether the court should compel arbitration, they do not dispute several foundational matters. No one disputes that all of the remaining claims fall within the scope of the CFA's arbitration clause. No one argues that Plaintiffs waived their right to arbitration by failing to invoke it sooner. *See* Jul. 15, 2013 ord. (Dkt. # 22) at 13 ("The court need not decide, at this time, whether Plaintiffs have waived their right to arbitration."). No one disputes that the court, as opposed to the arbitrator, should decide whether the parties' disputes are arbitrable. And, although Plaintiffs made a half-hearted effort to avoid the Federal Arbitration Act ("FAA"), they ultimately did not contest its applicability.[1]

The FAA creates a strong presumption in favor of the enforcement of an agreement to arbitrate. *Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1209 (9th Cir. 1998). When a valid arbitration agreement covers a dispute a party raises in a lawsuit, the court must order arbitration and stay the litigation pending the arbitration's outcome. 9 U.S.C. § 3. Once a court establishes that a claim is within the scope of an arbitration agreement, the agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. State law may supply grounds for declaring a contract unenforceable, including state unconscionability law. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686-87 (1996).

Digi-Net argues that the CFA's arbitration clause is procedurally and substantively unconscionable under Washington law. That contention falls within the scope of § 2 of the FAA. *See*, *e.g.*, *Kilgore v. Keybank, N.A.*, 718 F.3d 1052, 1059 (9th Cir. 2013) (en

---

[1] Plaintiffs initially asserted that the CFA's Washington choice-of-law clause excluded application of the FAA. That assertion ignores precedent. *See Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130-31 (9th Cir. 2000) (following *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995), holding that state choice-of-law-clause does not displace FAA rules allocating power between courts and arbitrators). In their reply, Plaintiffs still declined to acknowledge binding precedent, but conceded that their assertion that Washington arbitrability law applies would not impact the court's decision.

ORDER – 4

banc). A contract is substantively unconscionable when it contains terms that are so one-sided as to shock the conscience. *Adler v. Fred Lind Manor*, 103 P.3d 773, 781 (Wash. 2004). A contract is procedurally unconscionable when, considering all circumstances surrounding its formation, one party lacked a meaningful choice. *Id.* Either procedural or substantive unconscionability provides a basis to void a contract. *Gandee v. LDL Freedom Enters., Inc.*, 293 P.3d 1197, 1199 (Wash. 2013). Whether a contract is unconscionable is a question of law for the court. *Adler*, 103 P.3d at 781. A party who opposes arbitration "bears the burden of showing that the agreement is not enforceable." *Zuver v. Airtouch Commc'ns, Inc.*, 103 P.3d 753, 759 (Wash. 2004).

### 1. Procedural Unconscionability

Digi-Net's sole argument in favor of procedural unconscionability is that Plaintiffs did not provide adequate disclosure about the arbitration clause. The Ninth Circuit has recently provided a roadmap for assessing that contention. In *Smith v. JEM Group, Inc.*, 737 F.3d 636, 638-39 (9th Cir. 2013), the panel affirmed a district court's refusal to compel arbitration of claims arising out of a Washington attorney retainer agreement that contained an arbitration clause. The panel observed that Washington will not enforce a provision of an attorney fee agreement unless it complies with the Washington Rules of Professional Conduct ("RPCs"). *Id.* at 641 (citing *Valley/50th Ave., LLC v. Stewart*, 153 P.3d 186, 189 (Wash. 2007)). Among the considerations in evaluating an attorney fee agreement is "whether the fee agreement or confirming writing demonstrates that the client had received a reasonable and fair disclosure of material elements of the fee agreement . . . ." Wash. RPC 1.5(a)(9). No binding precedent addresses the application of that rule to an arbitration agreement within a fee agreement. The Washington Bar Association's Rules of Professional Conduct Committee, however, issued an advisory opinion in 1996 stating as follows:

> The Committee was of the opinion that there is no per se prohibition in the Rules of Professional Conduct against including an arbitration agreement in

ORDER – 5

> a fee agreement with a client, but that it (1) must be consistent with the lawyer's fiduciary obligations and statutory law such as RCW Ch. 4.24; and (2) it properly must be done only with full disclosure to the client.

Adv. Op. 1670 (available at *http://mcle.mywsba.org/IO/print.aspx?ID=1117*). An American Bar Association advisory opinion similarly concludes that arbitration agreements are permissible where the attorney has given the client "sufficient information to permit her to make an informed decision about whether to agree to the inclusion of the arbitration provision in the retainer agreement." *Smith*, 737 F.3d at 641 (quoting ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 02-425 (2002)). As the *Smith* court acknowledged, these opinions are persuasive, not binding, authority. 737 F.3d at 641.

The circumstances surrounding the formation of the CFA differ materially from those surrounding the fee agreement in *Smith*. The retainer agreement in *Smith* was a "four-page, fine-print" contract contained within a 21-page contract governing a consumer's retention of several entities, including a law firm, to assist with reducing her debts. *Id.* at 638-39. The arbitration clause in the CFA, by contrast, is in one of just twelve paragraphs in a six-page contract. There is no plausible argument that the CFA attempts to hide the arbitration clause in a "maze of fine print." *See Nelson v. McGoldrick*, 896 P.2d 1258, 1264 (Wash. 1995) (describing procedural unconscionability analysis). Indeed, the CFA specifically highlighted the arbitration agreement as a provision that by itself required the advice of independent counsel. The consumer in *Smith* never met her attorneys or communicated with them in person. 737 F.3d at 638-39. There is no evidence that Digi-Net and Plaintiffs either did not meet in person or that they could not have done so if Digi-Net chose to. No one has offered any plausible reason that Mr. Parker and Digi-Net's COO, presumably reasonably sophisticated businesspeople, would have been unable to comprehend the arbitration clause. Although Mr. Parker contends that he did not seek the advice of independent counsel, he cannot plausibly argue that the CFA left him unaware that he should do so, especially with respect to the

ORDER – 6

arbitration agreement.  Although Mr. Parker did not seek the advice of counsel, he does not contend that he was rushed or that he otherwise was deprived of an opportunity to understand the arbitration clause.  Finally, he does not point to any inadequacy in the clause itself.  It informs Digi-Net that it was waiving its right to litigation, including its right to trial by jury, its right to judicially-managed discovery, and its right to appeal.  Digi-Net does not suggest what else the clause should have disclosed.

Digi-Net's sole plausible argument in support of procedural unconscionability is that Plaintiffs did not separately mention the arbitration clause or otherwise advise Digi-Net about it.  The court is convinced that this distinction makes no difference in this case.  As the *Smith* court noted, Washington cannot, consistent with the FAA, impose a higher burden of disclosure for arbitration clauses in fee agreements than it imposes on the remainder of the agreement.  737 F.3d at 642 ("An attorney must disclose the arbitration agreement only to the same degree that he or she must disclose all material terms in an ARA.").  In other words, an attorney is no more obligated to provide disclosure beyond the terms of a clearly-worded arbitration agreement than she is to provide disclosure beyond the terms of the remainder of a clearly-worded fee agreement.

Finally, the court observes that where Washington wishes to impose a higher standard of disclosure on its attorneys, it has done so explicitly.  RPC 1.8, which addresses an attorney's obligation when entering a business transaction with a client or when acquiring a pecuniary interest adverse to her client, is similar to RPC 1.5 in that it mandates that the terms of the transaction be "fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client."  RCP 1.8(a)(1).  It also, however, mandates that the attorney advise her client "in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel," and that the attorney obtain the client's "informed consent" in writing.  RPC 1.8(a)(2)-(3).  That rule, which Washington courts have interpreted to require the attorney

ORDER – 7

to give "exactly the same information or advice as would have been given by a disinterested attorney," *In re Disciplinary Proceeding Against Holcomb*, 173 P.3d 898, 907 (Wash. 2007), explicitly imposes a higher standard of disclosure. No authority of which the court is aware suggests that this higher standard applies to fee agreements or to RPC 1.5.

Considering all of the circumstances surrounding the formation of the CFA, *see Nelson*, 896 P.2d at 1264, the court concludes that its arbitration provision is not procedurally unconscionable. The court suggests no opinion as to any other clause in the CFA, and in particular suggests no opinion as to whether the clauses of the agreement setting Plaintiffs' fees are disclosed in a "reasonable and fair fashion," whether those clauses are substantively reasonable, or whether those clauses comply with Plaintiffs' fiduciary obligations to their client.

**2. Substantive Unconscionability**

Digi-Net's sole argument as to substantive unconscionability is that the arbitration clause's prohibition on discovery is impermissible. The court notes at the outset that although both parties seem to interpret the arbitration clause to prohibit discovery (or a procedure akin to discovery) at the arbitration, the court does not share that interpretation. The arbitration clause discusses discovery as one of the rights inherent in litigation (like trial by jury) that the parties are giving up. It does not necessarily prohibit discovery or a similar procedure within the context of arbitration.

An arbitration clause that merely prohibits judicially-managed discovery is not impermissible. In *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1749-50 (2011), the Court held that state-law rules that interfere with the FAA's liberal policy in favor of arbitration are preempted. Although the Court did not squarely confront the question of whether a state could prohibit agreements that bar discovery, it strongly suggested that it would be impermissible to hold an arbitration agreement invalid merely because it

ORDER – 8

"fail[s] to provide for *judicially monitored* discovery." *Id.* at 1747 (emphasis added) ("In practice . . . the rule would have a disproportionate impact on arbitration agreements . . . .").

The *Concepcion* Court did not consider whether a total prohibition on any procedure akin to discovery might be invalid. Since *Concepcion*, however, many district courts within the Ninth Circuit have concluded that limitations on discovery in arbitration pass muster. *Lucas v. Hertz Corp.*, No. C11-1581LB, 2012 U.S. Dist. LEXIS 151762, at *8-9 (N.D. Cal. Oct. 22, 2012) (citing cases). At least one has approved an outright ban on discovery. *Tierra Right of Way Servs., Ltd. v. Abengoa Solar Inc.*, No. CV-11-323-PHX-GMS, 2011 U.S. Dist. LEXIS 61876, at *15-16 (D. Ariz. Jun. 9, 2011) ("An agreement between two corporate parties to decrease expected litigation costs is not unconscionable, particularly when both sides must adhere to the same prohibitions.").

The court will not decide today whether it could declare substantively unconscionable an arbitration clause that prohibited any meaningful opportunity for discovery. As the court has noted, it doubts that the CFA contains such a clause. The parties agreed to an arbitration clause that does not explicitly establish what rules the arbitrator will follow. The parties' choice of Washington law, however, presumably means that that Washington's Uniform Arbitration Act applies. That Act provides for discovery within arbitration. RCW 7.04A.170. In addition, the parties have not convinced the court that a ban on discovery, assuming there is one, favors one party over another. If one of the parties persuades the arbitrator that the parties agreed to waive all discovery, and if the opposing party can demonstrate that the lack of discovery prevented it from presenting its case, there are post-arbitration remedies available. *See*, *e.g.*, 9 U.S.C. § 10 (providing grounds for vacating arbitration award, including where arbitrator acted in excess of his powers).

ORDER – 9

For the reasons stated above, the court must compel arbitration of Plaintiffs' claims against Digi-Net. That, in turn, means that the court must stay this litigation pending the outcome of the arbitration. 9 U.S.C. § 3. The remaining question, to which the court now turns, is whether the court should certify for immediate appeal its previous ruling dismissing Plaintiffs' claims against Velaro and Mr. Parker.

**B.     Motion for Rule 54(b) Certification**

When the court dismissed Mr. Parker and Velaro from this action, it did not enter judgment, nor was its order appealable as a judgment. Rule 54(b) provides that in an action with multiple claims or multiple parties, "the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." The court made no such determination as to its July 2013 order.

The court will not make that determination now, despite Plaintiffs' request. Each of the claims that the court dismissed depends heavily on the outcome of the arbitration. The claim that Velaro tortiously interfered with the CFA, for example, will likely be moot if the arbitrator rules that the CFA is unenforceable. If the arbitrator awards damages to Plaintiffs for Digi-Net's alleged violation of the CFA, those damages are likely to substantially impact, as a legal matter and a practical matter, the claims against Velaro and Mr. Parker. For example, Plaintiffs' claim that they are the third party beneficiaries of Digi-Net's original settlement agreement may be pointless to pursue depending on what the arbitrator decides regarding Digi-Net's alleged breach of the CFA. The same is true of Plaintiffs' fraud claims against Velaro and Mr. Parker.

A court's decision to certify a partial judgment for appeal is discretionary. *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 10 (1980). A court should consider, among other things, "judicial administrative interests as well as the equities involved." *Id.* at 8. Here, the court's paramount consideration is that it can conceive of no

ORDER – 10

circumstances in which the result of the arbitration would not significantly impact the dismissed claims either as a legal matter or as a practical matter. Plaintiffs offer no countervailing considerations, other than their preference for a Rule 54(b) judgment. Because the arbitrable claims are the crux of this litigation, the court concludes that equity favors resolving them before permitting appeal of the remaining claims. *See SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1084 (9th Cir. 2012) (considering both the interrelationship of claims so as to prevent piecemeal appeals and the equities of the circumstances confronting the court).

### IV.  CONCLUSION

For the reasons previously stated, the court GRANTS Plaintiffs' motion to compel arbitration. Dkt. # 24. The court DENIES Plaintiffs' motion to for a Rule 54(b) judgment. Dkt. # 25. The clerk shall STAY this matter pending the completion of arbitration. Plaintiffs, as the proponents of arbitration, must submit a brief report on the status of the arbitration on April 10 and on the tenth day of every second month thereafter. The parties shall immediately notify the court of the conclusion of arbitration or any other matters impacting this stay.

DATED this 11th day of February, 2014.

*[signature]*

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 11